IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA

v.                                    CRIMINAL ACTION NO.  3:21-00057

THOMAS RAY III

## MEMORANDUM OPINION AND ORDER

Pending is Defendant Thomas Ray, III's Motion for a New Trial. ECF No. 170. For the reasons set forth below, the Defendant's motion is **DENIED**.

## I.  FACTS

Defendant Thomas Ray, III was charged in a single-count Superseding Indictment with possession of a firearm while a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The Defendant's jury trial began on July 11, 2023.

The Defendant's trial began, as all jury trials do, with voir dire. Throughout the jury selection process, the Court asked a series of questions to the venire as a group, including:

> If you're selected as a juror, would any of you be unable to render a verdict based only on the evidence you hear at the trial, my instructions, disregarding any other ideas, notions or beliefs you might have about the law?[1]

and

> Can any of you think of any reason why you believe you could not sit on this jury and render a fair and impartial verdict in this case?[2]

---

[1] Tr. Voir Dire, at 50:13–16, ECF No. 173.
[2] *Id.* at 50:24–51:1.

None of the potential jurors, including Juror 24, responded to these questions. Importantly, both of these questions were asked *after* the Court identified the attorneys representing the Government and the Defendant.[3]

After the Court completed its questioning, the lawyers for the Defendant and the Government were permitted to ask questions of individual jurors in the Court's conference room. Seemingly due to his lack of responses to the Court's questions to the broader venire, the attorneys for the Government and the Defendant did not seek to question Juror 24 individually.

At the end of voir dire, 12 jurors and two alternates, including Juror 24, were sworn in as the jury for the Defendant's case. The jurors took the following oath:

> Do you and each of your solemnly swear or affirm that you will well and truly try the matter in issue now on trial and render a true verdict according to the law and evidence, so help you God?

Tr. Voir Dire, at 127:13–17.

After the jury was sworn, they were given, *inter alia*, the following preliminary instructions:

> You are the judges of the facts. You must apply the facts as you find them to the law as I give it to you in these instructions and in later instructions. You must decide this case based solely on the facts as you find them and the law as I give it to you. You must base your verdict solely upon the evidence presented in this case. The evidence consists of the sworn testimony of the witnesses, exhibits or stipulations entered into evidence, and any matters of which I take judicial notice.
>
> . . .
>
> Do not make up your mind about what the verdict should be until you've heard all the evidence and my instructions, and you go into the jury room to decide the case, and you and your fellow jurors can discuss the evidence. Keep an open mind until then.

Tr. Jury Trial Day One, at 2:3–12, 6:13–17, ECF No. 176.

---

[3] One of the attorneys who appeared for the Government is a woman. The significance of this fact to the Defendant's motion will shortly become apparent.

The remainder of the first day of trial proceeded in a normal fashion.

On the second day of trial, the Defendant took the stand and testified. Tr. Jury Trial Day Two, at 243:13–285:2, ECF No. 177. On the witness stand, the Defendant admitted that he could not lawfully possess a gun but submitted to the jury that on the day he was arrested, he was twice attacked by individuals with guns. After the first attack, he testified that he immediately reacted to disarm the man and obtain the gun. He then fled what he described as a crowd of women who were threatening to kill him. Although he intended to dispose of the gun and call the police, he testified that he was confronted by yet another armed assailant. Thereafter, the Defendant seemingly blacked out, and he awoke to find himself shot by the police.

At the close of evidence, Defendant's counsel asked the Court to read the "justification defense" to the jury. *See id.* at 286:22–288:20. The Fourth Circuit has recognized that a defendant is entitled to a justification instruction where he has "produced evidence which would allow the factfinder to conclude that he:

(1) was under unlawful and present threat of death or serious bodily injury;

(2) did not recklessly place himself in a situation where he would be forced to engage in criminal conduct;

(3) had no reasonable legal alternative (to both the criminal act and the avoidance of the threatened harm); and

(4) a direct causal relationship between the criminal action and the avoidance of the threatened harm."

*United States v. Ricks*, 573 F.3d 198, 202 (4th Cir. 2009) (quoting *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989)).

Although the Court described the Defendant's testimony as "an outlandish, in fact, fairly preposterous tale," it felt "obligated to give the instruction because it [was] at least theoretically possible that the jury would believe" it. Tr. Jury Trial Day Two, at 290:20–23.

On the afternoon of July 12, 2023, the Defendant's case was submitted to the jury. In advance of deliberation, the Court provided the jurors with three sets of instructions: First, the Court gave general instructions on the jurors' duties. During this set of instructions, the Court once again emphasized that the jury's verdict was to be based "solely upon the evidence presented in this case." *Id.* at 295:13–14. Second, the Court gave instructions regarding the elements for the charge in the Superseding Indictment and the justification defense. Third, after the parties' closing arguments, the Court provided instructions related to the jury's deliberations and rendering of a verdict. Within this last set of instructions, the Court informed the jurors that if they needed to communicate with the Court about anything, it was to do so in writing. In conjunction with that directive, the Court included the following admonition:

> If you do send me a note, please do not reveal to me or any other person how the jury stands on the question of guilt or innocence.

*Id.* at 333:22–24.

After providing the instructions, the Court dismissed two jurors from the panel.[4] In doing so, the Court advised:

> I have no reason to believe that we're going to need you later, but please do not discuss the case with anyone until this jury has reached a verdict.

*Id.* at 334:12–14.

Approximately two hours after the jury retired, the Court received the following note, which was read to the parties:

---

[4] Shortly after the "alternates" were dismissed, the Court realized that it one of the jurors it excused was not, in fact, an alternate. Upon realizing this error, the Court addressed the parties. Neither party had any objection to the actual "alternate" juror continuing to deliberate to reach a verdict notwithstanding the Court's mistake in allowing the wrong juror to be excused. *See* Tr. Jury Trial Day Two 335:15–337:11.

> We're at 11-1, [marked out words]. The one person that is saying he isn't guilty because of the loophole of being in danger.
>
> The one person also hates women lawyers and hates cops. He is also accusing the female lawyer of flirting with the men on trial. The one guy is treating this like a video game and laughing about it.
>
> [marked out words]
>
> He is focused on personal opinions and not the facts.

Jury Note, ECF No. 154; Tr. Jury Trial Day Two, at 338:15–23.

Upon reading the note to the parties, counsel for the Government stated, "I'm a little taken aback. Give me a second here to try to think. I've never heard of such a thing. That's outrageous." Tr. Jury Trial Day Two, at 338:25–339:2. The Defendant's counsel was similarly taken aback. *Id.* at 339:3–5 ("Same here, Judge, I'm kind of taken aback. I don't know what to say. Clearly they did not listen to the Court's instructions.").

Thereafter, the Court announced its intentions:

> Well, here's the way I'm going to treat this. In my view, I've now had one of the jurors, presumably the foreperson, report to me juror misconduct. And I intend to ask the foreperson to come into court and brief us, so to speak, respond to this and explain this to us. And presumably, once he's done that and identified the juror, I then intend to bring that juror up, with the foreperson here, [and] inquire of that juror. And if it confirms what the foreperson has reported, I'm going to discharge that juror from the trial, in which case, we're going to have to call one of those alternates to try to come back and resume deliberations.

*Id.* at 339:6–16. Before the foreperson had made his way back into the court, the Defendant's counsel asked to go back on the record so that he could make the following objection:

> Your Honor, I'm going to have to object to the Court -- I don't have a problem with the Court inquiring of the foreperson. I do have an issue with the Court replacing one of the jurors, and here's why, Judge.
>
> Clearly they have not followed -- everybody, including the foreperson, has not followed the Court's instructions and has informed the Court which way they're leaning. I think that poses a problem going forward in regards to whatever the -- if the Court replaces that juror, brings in an alternate, and then that alternate votes

>which way, one way or another, to convict or acquit, I think -- well, if it's to acquit, I don't think I'll have a problem.
>
>But if it's to convict, I think that is a big problem because we are influencing the province of the jury after they begin deliberations when they have voluntarily disclosed something which the Court explicitly -- the very last instruction that you have them was do not tell anybody what is happening, at least in that regard.
>
>So I think the Court, at that point -- I don't think the Court can or should replace a juror. I think you have to declare a mistrial if that's where you end up.

*Id.* at 340:16–341:11.

>The Court noted counsel's position but ultimately disagreed, explaining,
>
>I believe that even though the foreperson may have violated my instruction by advising where the jury stands on guilt or innocence, what he then discloses to the Court requires that the Court understand that the recalcitrant juror, the one that might be guilty of misconduct, was taking the view of acquittal for completely inappropriate, improper reasons. So I don't think there is any way of avoiding, whether it's in this note or not, once the foreperson explains the misconduct that I believe may be occurring on the part of one of the jurors, it would necessarily result in revealing where the jury stands.
>
>Having said that, I don't see how there is any improper influence on the foreperson, much less the rest of the jury, by my taking action against the juror guilty of misconduct.

*Id.* at 341:16–342:5.

The jury foreperson was then questioned by the Court. The foreperson confirmed that Juror 24 "literally said" what was described in the note, including that Juror 24 thought the female Assistant United States Attorney was "flirting with cops up on the stand," that "[h]e doesn't like women," and that "[h]e hates women lawyers." *Id.* at 343:7–344:19. He also explained that Juror 24 was "all over the place" and that the foreperson "tried to bring him back in about the facts of the case." *Id.* at 343:10–19.

Juror 24 was then brought into the courtroom for questioning. The juror confirmed that he had told his fellow jurors that "females should not be" attorneys. *Id.* at 346:25–347:10. He also confirmed that he had accused the woman attorney working for the Government of "flirting with people in the courtroom." *Id.* at 347:16–348:10.[5]

The jury foreperson also stated that Juror 24 refused to engage with the evidence. *Id.* at 349:16–18 ("On the fact that we tried to get him to, ah, look at all the evidence -- look at all the evidence. 'I don't need to see that,' he said. [']I don't need to see this.[']"); *id.* at 349:24–350:10 (alleging that, when asked to discuss the Court's instructions, Juror 24 remarked "You're boring me. I read it out loud. You're boring me, you're – we've heard this before"). Juror 24 disputed these allegations. *See id.* at 349:19, 350:11–15.

Ultimately, the Court found the foreperson's reports to be credible. *See id.* 353:16–23. After the following rebuke, Juror 24 was discharged from the jury:

> All right. In any event, given at least that you made these statements about a female being an attorney and a prosecutor shows, to me, deep misconduct on your part. These are surprising comments in this day and age, but to express -- having expressed this opinion and allow it to be guiding your deliberations in my mind constitutes serious juror misconduct.
>
> So, although this may not be the end of our discussion, I'm discharging you from further consideration as a juror in this case. I intend to look into whether action can or should be taken, and, if so, you'll be given prompt notice of that, of course. You'll have a full opportunity to respond. But given what I have learned at this point, I'm discharging you from this case. You should leave the courthouse.

*Id.* at 350:16–351:5.

---

[5] The Defendant unconvincingly argues that Juror 24 stated that he was "half joking" when he said he believed that women should not be attorneys. Mot. for New Trial, at 6. Yet, the transcript clearly indicates that he was stated he was "half serious, half joking" about the only female attorney "flirting with people in the courtroom." Regardless, it is evident that Juror 24 made both statements to his fellow jurors.

Upon consulting with the parties, the Court recalled one of jurors who had been previously dismissed. The Court advised the reconstituted jury as follows:

> I believe Mr. Thompson reported credibly to me that Juror 24 made disparaging remarks that indicated deep prejudices about, among other things, women being lawyers, personal criticism of the woman prosecutor in this case, and other remarks that Mr. Thompson interpreted was a refusal on the part of that juror to have any meaningful discussion of the evidence in the case to try to reach a verdict. So I have discharged him as a member of this jury.

*Id*. 353:16–23. Additionally, the Court instructed the jury to begin its deliberations anew. *Id.* at 354:20–355:7. That evening, the jury returned a unanimous guilty verdict. *See id.* at 356:20–357:22.

The Defendant now moves for a new trial based on the Court's dismissal of Juror 24.

## II.  LEGAL STANDARD

Pursuant to Rule 33 of the Federal Rules of Criminal Procedure, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." In resolving a motion for a new trial, trial courts retain significant discretion. *See United States v. Dorlouis*, 107 F.3d 248, 254 (4th Cir. 1997).

## III. ANALYSIS

In criminal cases, "[a] defendant has a reasonable expectation that, barring unforeseen circumstances, he will be tried by the jury selected." *United States v. Nelson*, 102 F.3d 1344, 1349 (4th Cir. 1996). Accordingly, the trial court "is not at liberty to interfere with the jury selected unless it has adequate cause." *Id.*; *see* Fed. R. Crim. P. 23(b)(3) (a juror may be excused by the Court "[a]fter the jury has retired to deliberate . . . if the court finds good cause"). Although the Court must have a "legally relevant reason" and "factual basis" for removing and replacing a juror, it is also imbued with discretion in making those determinations. *See Nelson*, 102 F.3d at 1349.

If the trial court finds good cause to remove a juror after the jury has retired for deliberations, the court can "permit a jury of 11 persons to return a verdict," Fed. R. Crim. P. 23(b)(3), or replace the juror with an alternate, Fed. R. Crim. P. 24(c)(3). "If an alternate replaces a juror after deliberations have begun, the court must instruct the jury to begin its deliberations anew." Fed. R. Crim. P. 24(c)(3).

To establish a new trial based on the removal and substitution of a juror, "the objecting party must establish first that the substitution was in error, and second that prejudice resulted from the substitution." *United States v. Toliver*, 793 F. App'x 151, 159 (4th Cir. 2010).

In this instance, the Court remains convinced that the substitution was not in error. The Court found that good cause existed to remove Juror 24. Specifically, based on the statements of Juror 24 and the jury foreperson, the Court found Juror 24's prejudices resulted in his refusal to participate in jury deliberations. Tr. Jury Trial Day Two, at 350:16–351:5, 353:16–23.

The Defendant argues that removal of Juror 24 was not proper for two intertwined reasons. First, he submits that Juror 24's comment that "females should not be lawyers," does not amount to juror misconduct. Mot. for New Trial, at 6.

The Defendant fails to appreciate, however, that the Court's finding of misconduct was not limited to Juror 24's comment that "females should not be lawyers." Here, the jury was repeatedly instructed to—and took an oath attesting that it would—base its verdict solely upon the evidence that was presented to it. *See* Tr. Jury Trial Day One, at 2:3–12, 6:13–17; Tr. Jury Trial Day Two, at 295:13–14. The Court found, based on the foreperson's credible description, that in addition

to—and likely because of his bias against female attorneys—Juror 24 was in not participating in the required evaluation of the evidence. Tr. Jury Trial Day Two, at 353:16–23.[6]

It is well recognized that refusal to follow the Court's instructions and to participate in deliberations is sufficiently good cause to excuse a juror. *See United States v. Kemp*, 500 F.3d 257, 301 (3d Cir. 2007); *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006); *United States v. Batiste*, No. 06-20373-CR, 2009 WL 10668766 (S.D. Fla. Nov. 23, 2009), *aff'd sub nom. United States v. Augustin*, 661 F.3d 1105 (11th Cir. 2011); *see also Hicks v. Anne Arundel Cnty.*, 637 F. Supp. 3d 335, 341 (D. Md. 2022) ("A failure to follow instructions is good cause to excuse a juror."); *In re Wright Med. Tech. Inc., Conserve Hip Implant Prod. Liab. Litig.*, 178 F. Supp. 3d 1321, 1347 (N.D. Ga. 2016) ("The Juror's refusal to follow the Court's instructions as contained on the Supplemental Verdict Form, constituted good—if not compelling—cause to dismiss him from the jury.").

Accordingly, the Defendant's extraneous argument that Juror 24 "can have a rational explanation for why he holds the belief that females should not be attorneys," Mot. for New Trial, at 6, is simply not persuasive. Surely, Juror 24 is permitted to have his objectionable personal beliefs.[7] He is not, however, permitted to allow those beliefs to direct his participation in jury

---

[6] Notwithstanding the fact that the Court's decision to excuse Juror 24 was not based solely on his comments about female attorneys and the sexist accusations lobbied at the female Assistant United States' Attorney in this case, a juror's bias against the government can be sufficient grounds for discharging a juror. *See United States v. Ozomaro*, 44 F.4th 538, 543–47 (6th Cir. 2022). Accordingly, the Court is not convinced that it could not have found Juror 24's evident bias against the attorney for the Government alone to be sufficiently good cause for his removal.

[7] The Courts declines the invitation to further discuss the "rationality" of opinions that women "should not hold positions of authority" or work outside the home. *See* Mot. for New Trial, at 6.

deliberations or to influence his verdict.[8]

Second, the Defendant argues that Juror 24's "'not guilty' vote was based on the justification instruction given by the Court." Mot. for New Trial, at 9. In furtherance of this argument, the Defendant states "[t]here was no evidence that [Juror 24] based his verdict on his personal opinion. Nor was there any evidence that Mr. Williams let his personal opinion guide him in any way." *Id.* at 11. This argument is indisputably belied by the jury's note, which plainly stated "[Juror 24] is focused on personal opinions and not the facts." Jury Note. It is also contradicted by the credible accounting of the jury foreperson, who described Juror 24 as unwilling to engage with the evidence or the Court's instructions. Tr. Jury Trial Day Two, at 349:16–350:10. Despite Juror 24's objections to the foreperson's remarks, the Court found the allegations to be credible.[9]

Additionally, the Defendant has set forth no evidence establishing that Juror 24 was removed *because* of his purported not-guilty verdict. As set forth herein, the Court determination was based on Juror 24's misconduct.[10]

Finally, while not raised by the Defendant in his briefing, the Defendant argued before the Court at trial that removal of Juror 24 was inappropriate because the jury and/or the foreperson,

---

[8] Indeed, the Defendant seems to concede that if Juror 24's "beliefs" influenced his verdict, dismissal was appropriate. Mot. for New Trial, at 6 ("As long as [Juror 24] did not allow his personal belief to interfere with how he came to his decision, then it is incorrect to dismiss [Juror 24].").

[9] In fact, if Juror 24's beliefs about the propriety of women working as attorneys did not affect his participation in deliberations, it seems highly unlikely he would have made those opinions known to his fellow jurors or that he would have made the offensive comments about the only female attorney "flirting" with men during the course of the trial.

[10] This case is not akin to *United States v. Hernandez*, 862 F.2d 17 (2d Cir. 1988), for example, where the district court removed a juror for unfitness on the fourth day of deliberations two days after stating it would "wait and [see] . . . if there is a hung jury." In this case, the Court promptly removed Juror 24 after determining he had committed juror misconduct.

failed to adhere to the Court's instruction not to disclose its leanings to the Court. *See* Tr. Jury Trial Day Two, at 340:16–341:11.

"The secrecy of deliberations is critical to the success of the jury system." *United States v. Boone*, 458 F.3d 321, 329 (3d Cir. 2006). "It is manifest, however, that a juror who refuses to deliberate or who commits jury nullification violates the sworn jury oath and prevents the jury from fulfilling its constitutional role." *Id.* Accordingly, there are times when a trial court may investigate allegations of juror misconduct, even where it impinges on the secrecy of the deliberation process. *See id.*

As explained to the Defendant at trial, even if the foreperson had not disclosed the jury's leanings in the note it sent out to the Court, any examination of the foreperson and Juror 24 would have ultimately resulted in revealing where the jury stood. *See* Tr. Jury Trial Day Two, at 341:16–342:5.

The removal of Juror 24 did not "invade the province of the jury." The Court was within its discretion to determine, based on the evidence before it, that Juror 24 was not upholding the oath that he took.

Having determined that Juror 24 must be removed, the Court could have permitted the jury of 11 to proceed to a verdict. Instead, the Court replaced Juror 24 with an alternate juror, and directed the entire jury to begin its deliberations anew and to set aside the frustrations that had arisen. *Id.* at 355:2–7.[11]

---

[11] The Defendant did not object to the Court's recall of the previously dismissed juror at trial and has not addressed it in his Motion.

Thereafter, the jury came to the unanimous decision that the Defendant was guilty of the offense described in the Superseding Indictment. The Court has not been apprised of any convincing reason why that verdict must be set aside and this case be retried.

## IV. CONCLUSION

In light of the foregoing, the Defendant's Motion for a New Trial, ECF No. 170, is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel and the defendant, the United States Attorney's Office, the United States Probation Office, and the United States Marshals Service.

ENTER: August 30, 2023

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE